**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**FISHERIES SURVIVAL FUND**
**2 Middle Street**
**Fairhaven, MA 02719,**

**Plaintiff,**

**v.**

**THE HONORABLE CARLOS GUTIERREZ,**
**in his official capacity as the Secretary of Commerce,**
**United States Department of Commerce**
**1401 Constitution Avenue, N.W.**
**Washington, D.C. 20230**

**Defendant.**

**Civil Action No. ____**

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

**Dated: July 6, 2007**

**David E. Frulla**
**D.C. Bar No. 414170**
**Shaun M. Gehan**
**D.C. Bar No. 483720**
**Kelley Drye & Warren LLP**
**3050 K Street, N.W. – Suite 400**
**Washington, D.C. 20007**
**Telephone: (202) 342-8400**
**Facsimile: (202) 342-8451**

**Attorneys for Plaintiff**

## INTRODUCTION

1. Plaintiff Fisheries Survival Fund ("FSF") is an organization whose participants include over 200 full-time Atlantic scallop fishing vessels. FSF and its participants began working to help research, design, and test gear and other solutions to address occasional warm weather-month interactions between the fishery and threatened and endangered sea turtles in the mid-Atlantic portion of the fishery as soon as this issue emerged in 2000.

2. Among other things, FSF participants helped develop and test a modification to scallop dredges, known as "turtle chains," in conjunction with fishing gear and scientific experts. These turtle chains are chain mats that cover the mouth of a scallop dredge to prevent turtles from entering the dredge.

3. Upon completion of successful testing of these turtle chains, FSF and the Garden State Seafood Association petitioned Defendant for a rulemaking to require the mandatory use of this gear modification.

4. As explained in more depth below, such a rule was ultimately promulgated on August 25, 2006, albeit under the Endangered Species Act ("ESA"), which is different authority than that under which FSF petitioned. 71 Fed. Reg. 50361, 50361 (Aug. 25, 2006).

5. The regulations implementing the turtle chain requirements are set forth at 50 C.F.R. §§ 222.102 (definitions); 223.205(b)(15),(16) (prohibitions); 223.206(d)(11) (explaining the requirement and gear configuration).

6. Defendant subsequently promulgated under the ESA an "emergency" regulatory change purporting to effect a "correction" to the final rule of August 25, 2006. This correction was published at 71 Fed. Reg. 66466 (Nov. 15, 2006).

7. The emergency correction rule did not indicate under which specific provision the ESA it was promulgated.

8. In this action, Plaintiff FSF challenges the emergency rule of November 15, 2006.

9. More specifically, the original, August 25 rule allowed for two different configurations for the turtle chains in the mat, while the emergency, November 15 correction prohibited one of these two permissible configurations. Ironically, the correction actually prohibited the configuration that had been successfully tested, although the correction erroneously stated otherwise.

10. The Defendant lacked legally sufficient cause to promulgate the challenged correction rule on an emergency basis. In so doing, the Defendant failed to comply with the notice and comment period and the statutory 30-day "cooling off" period prescribed for informal rulemaking under the Administrative Procedure Act, 5 U.S.C. § 553(b),(d). Defendant also did not meet the ESA standard for an emergency rule.

11. More specifically, the correction's effective date of November 20 was a mere 10 days before the original rule's requirement for periodic turtle chain use each year (May 1-November 30) was set to end for the year.

12. Further, no sea turtle has been observed taken by scallop dredges in November. Rather, as the Final Environmental Assessment promulgated in support of the original turtle chain rule explained, the latest in the year a sea turtle has been observed or reported to have been taken is October. NMFS, Environmental Assessment and Regulatory Impact Review [and] Regulatory Flexibility Analysis of Sea Turtle Conservation Measures for the Mid-Atlantic Sea Scallop Dredge Fishery, Table 2.1, at 16-17 (April 2006), *available at*

http://www.nero.noaa.gov/prot_res/ProResDiv/turtles/06scalturtleea.pdf (last visited Dec. 29, 2006) (hereinafter "NMFS, 2006 Sea Turtle Analysis").

13. For reasons set forth in more detail herein, the emergency regulation fails to meet the requirements of the APA and ESA as well as the standards of reasoned decision-making. As explained more fully below, Plaintiff have suffered and continue to suffer harm from Defendant's illegal action.

## PARTIES

14. Plaintiff FSF is a non-profit association organized in 1998 to advance and protect interests of full-time Atlantic sea scallop fishermen through regulatory advocacy, legal defense, and cooperative scientific research. Based in Fairhaven, Massachusetts – the adjacent town to New Bedford, Massachusetts, the Nation's top commercial fishing port in terms of value of landed fish – FSF's participants include over 200 full-time limited access scallop vessels, home-ported from Massachusetts through Virginia. FSF and its scientific consultants developed the turtle chain design impacted by the correction rule at issue in order to both help protect threatened and endangered sea turtles from exceedingly occasional instances in which these animals have been caught in scallop dredges during the warm weather months in the Mid-Atlantic, as well as to ensure that its participants' ability to pursue their livelihoods was maintained. Unless this Court provides relief, FSF's members will continue to suffer harm from Defendant's failure to adhere to applicable law, as well as because the correction will impose additional and unanticipated regulatory risks and costs.

15. Defendant, the Honorable Carlos Gutierrez, is the Secretary of the Department of Commerce. Defendant, by and through his designees at the National Marine Fisheries Service

("NMFS"), undertook the illegal and unauthorized actions which are challenged in this case. Secretary Gutierrez is sued solely in his official capacity.

## JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction pursuant to 28 U.S.C § 2201 (the Declaratory Judgment Act); 5 U.S.C. §§ 701-06 (the Administrative Procedure Act's judicial review provisions); and 16 U.S.C. § 1540(c) (jurisdictional provision of the Endangered Species Act).

17. This Court also has jurisdiction pursuant to 28 U.S.C. § 1331, which grants the district courts "original jurisdiction of all civil actions arising under the . . . laws . . . of the United States."

18. Venue lies in this Court pursuant to 28 U.S.C. § 1391(e), as the Defendant Secretary of Commerce is an officer of the United States.

## FACTUAL ALLEGATIONS

19. Beginning in the early part of this decade, a surprising, but very modest number of interactions between scallop fishing gear and sea turtles began being reported during the summer and early fall months in the waters of the mid-Atlantic region.

20. In response, FSF and its scientific consultants began developing proactive responses to reduce the number and severity of such interactions, including providing participants with instructions in how both to avoid such interactions, and resuscitate and carefully release incidentally encountered sea turtles. In addition, they conducted research into scallop dredge gear modifications with the goal of minimizing harm to a turtle if it encounters a dredge. A primary source of harm results from a turtle's entering the dredge bag where it can be buffeted by scallops and other materials in the dredge, and then dumped on the deck with the dredge contents.

21. These turtle chains were tested in over 2,400 tows conducted with a typical configuration of two dredges pulled side-by-side, one with the chains and the other without. In these tests, the chains proved to be completely effective at excluding turtles. This research was conducted by scientists at the Virginia Institute of Marine Science of the College of William & Mary, with assistance from FSF consultants and participants, and was undertaken in cooperation with NMFS.

22. In June 2004, FSF, in conjunction with the Garden State Seafood Association ("GSSA"), and based on the success of the research, petitioned NMFS under the Magnuson-Stevens Fishery Conservation and Management Act ("MSA"), 16 U.S.C. § 1855(c), to implement a requirement that these chains be used by scallop vessels fishing in areas and at times when encounters with sea turtles are most likely (though still rare).

23. Although NMFS stated it lacked authority to implement the requested rule under the MSA, see 69 Fed. Reg. 63498, 63498 (Nov. 2, 2004), it subsequently enacted a substantially similar, albeit more conservative, rule pursuant to its authority under the Endangered Species Act, 16 U.S.C. § 1533(d), on August 25, 2006. 79 Fed. Reg. 50361 (Aug. 25, 2006).

24. In comparison to FSF's proposal, the final rule extended the period of time for which the chain mat was required to be used to November 30 each year, while the industry proposed the requirement end on October 15 due to the fact that, to its knowledge, no interactions had ever been known to occur later than early October. NMFS also extended the area to which the rule applied further north than that recommended by the industry. NMFS did not, however, alter the specifications for the gear proposed by FSF and GSSA.

25. Subsequent to the implementation of this rule, no sea turtles have been reported to have been captured by the Atlantic sea scallop dredge participants. Moreover, in recent years

even prior to the rule, takes of turtles had declined from the levels observed in 2001-2003. Respectively, in those three years there were 13, 22, and 24 reported and observed sea turtle takes. The comparable numbers for 2004 and 2005 were 9 and 3. NMFS, Sea Turtle Analysis, at 16-17 (Table 2.1).

26. The turtle chain mat was purposefully designed to have a set number of evenly spaced vertical and horizontal chains, depending on the size of the dredge, to help ensure ease of compliance and enforcement. The final rule implementing the initial turtle chain rule specified the requirement as follows:

> The chain mat must be composed of "tickler" (horizontal) chains and "vertical" chains that are evenly spaced and configured in the following manner dependent on the dredge width: Dredges with a frame width of greater than 13 ft (3.96 m) must use 11 vertical and 6 tickler chains; dredges with a frame width of 11 ft to 13 ft (3.35-3.96 m) must use 9 vertical and 5 tickler chains; dredges with a frame width of 10 ft (3.05 m) to less than 11 ft (3.35 m) must use 7 vertical and 4 tickler chains; dredges with a frame width of less than 10 ft (3.05 m) must use 5 vertical and 3 tickler chains. The tickler and vertical chains must be connected to each other with a shackle or link at the intersection point.

71 Fed. Reg. at 50372. This standard is consistent with the tested design.

27. The rule also allowed persons to employ different configurations, stating: "If a vessel elects to use a different configuration, the length of each side of the square or rectangle formed by the intersecting chains must be less than or equal to 14 inches (35.5 cm). The chains must be connected to each other with a shackle or link at each intersection point. The measurement must be taken along the chain, with the chain held taut, and include one shackle or link at the intersection point and all links in the chain up to, but excluding, the shackle or link at the other intersection point." *Id.* at 50372-73.

28. To FSF's knowledge, no chain mat meeting this latter standard has ever been tested.

29. However, on November 15, 2006, without prior notice or the opportunity for public comment, NMFS instituted the correction rulemaking that struck the method of configuring the chain mats as designed and tested, requiring instead that they be rigged according to the untested alternative 14-inch square configuration. The emergency rule was made effective five days after publication, on November 20, 2007.

30. The rationale for the emergency rule was based on several mischaracterizations and outright inaccuracies about the gear design that was subject to rigorous testing. However, the public was deprived of an opportunity to comment on these inaccuracies, because the regulation was issued on an emergency basis.

31. Moreover, although the latest any interactions with sea turtles had ever been recorded was October, and even though this was the first year that the turtle chains were ever required, the Defendant waived the APA's requirement that a rule not be made effective for at least thirty days after publication of a final rule. 5 U.S.C. § 553(d).

32. Although the Secretary purported to have good cause for immediate implementation, the fact is that after November 30, 2006, scallop fishermen were not required to utilize the chains again until May 1, 2007. Thus, the waiver of prior notice and comment and the cooling-off period were only invoked, so that for ten days in 2006, during a period when no turtles have ever been recorded as interacting with scallop gear, sea turtles would have some undetermined extra level of protection that may or may not have been provided by insuring that the squares in the chain mats did not exceed 14-inches.

33. On January 16, 2007, the FSF served a Notice of Intent to Sue to Defendant and his designees, the Undersecretary for Oceans and Atmosphere and the Assistant Administrator for Fisheries, that presented the same claims as are raised in this suit.

34. The agency never officially responded to the Notice of Intent.

35. FSF participants also have a justifiable concern that they may be unintentionally found out of compliance with a strict 14-inch standard because the chains stretch during fishing operations. One of the reasons the gear specialists and researchers designed the gear based on the number of equally spaced chains was due, in part, to this recognized phenomenon of the chains stretching.

36. The equal chain-spacing configuration was also selected for ease, reliability and safety of enforcement. It is difficult and even dangerous for the Coast Guard to measure the dimensions of an array of chain squares on a fifteen-foot scallop dredge swinging above a vessel deck at sea. In addition, the potential for inaccurate measurement can also exist depending on how well the chain mat can be laid out on deck.

37. Finally, because of the need for frequent, precautionary replacement, the additional chain needed to comply with the correction rule raises costs of compliance beyond that considered by the Defendant in the emergency correction rule or the original rule.

38. The scallop industry, however, was precluded from raising these concerns due to the short-circuiting of proper administrative procedure by the Defendant.

39. For these reasons, FSF and its participants have been harmed by Defendant's unlawful action.

**COUNT ONE**
**(<u>APA and ESA</u>)**

40. Plaintiff reallege paragraphs 1 through 39 as if set forth in full herein.

41. The APA, at section 706(2), proscribes agency action that is:

> (A) arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority,

> or limitations, or short of statutory right; [or] (D) without observance of procedure required by law . . . .

42. The ESA, at 16 U.S.C. § 1533(b)(8), states: "The publication in the Federal Register of any proposed or final regulation which is necessary or appropriate to carry out the purposes of this chapter shall include a summary by the Secretary of the data on which such regulation is based and shall show the relationship of such data to such regulation."

43. The emergency rule is arbitrary, capricious, and unlawful because, among other reasons, it is based on a faulty understanding of the gear that was scientifically tested and approved. Moreover, the Defendant failed to account for actual impacts of the change in configuration, such as additional costs of chains; increased fuel costs; the risk of unintentional violations; lost fishing time due to additional, on-going maintenance; and reduced scallop catches.

**COUNT TWO**
**(APA and ESA)**

44. Plaintiff reallege paragraphs 1 through 43 as if they were set forth in full herein.

45. The APA states that a "[g]eneral notice of proposed rule making shall be published in the Federal Register" and that "the agency shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation." 5 U.S.C. § 553(b), (c).

46. The APA further provides that no rule shall go into effect until thirty days after publication as a final rule. *Id.* § (d).

47. The only exceptions to these requirements are when "good cause" is shown and explained in conjunction with the rule. *Id.* § (b)(3)(B), (d)(3).

48. The ESA, at 16 U.S.C. § 1533(b)(4), states: "Except as provided in paragraphs (5) and (6) of this subsection, the provisions of section 553 of title 5 (relating to rulemaking procedures), shall apply to any regulation promulgated to carry out the purposes of this chapter."

49. The ESA, at section 1533(b)(7), contains an additional exemption from APA requirements, stating:

> (7) Neither paragraph (4), (5), or (6) of this subsection nor section 553 of title 5 shall apply to any regulation issued by the Secretary in regard to any emergency posing a significant risk to the well-being of any species of fish or wildlife or plants, but only if—
>
> (A) at the time of publication of the regulation in the Federal Register the Secretary publishes therein detailed reasons why such regulation is necessary; and
>
> (B) in the case such regulation applies to resident species of fish or wildlife, or plants, the Secretary gives actual notice of such regulation to the State agency in each State in which such species is believed to occur.
>
> Such regulation shall, at the discretion of the Secretary, take effect immediately upon the publication of the regulation in the Federal Register. . . .

50. Defendant lacked and failed to present good cause for waiving prior notice and comment and the delay in post-publication effectiveness under the APA.

51. To the extent that Defendant relied on the emergency rulemaking provision of the ESA, Defendant lacked and failed to present the existence of "any emergency posing a significant risk to the well-being of any species of fish" and/or any other ESA emergency rulemaking requirement.

**PRAYERS FOR RELIEF**

WHEREFORE, Plaintiff respectfully seek an Order of this Court:

(a) Finding the emergency chain mat rule arbitrary and capricious, an abuse of discretion, and not in accordance with law, and therefore unlawfully implemented,

(b) Invalidating the emergency chain mat rule's elimination of the even chain spacing requirement that was tested and originally implemented on August 25, 2006;

(c) Declaring, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, that the emergency rule was promulgated in violation of the APA and ESA for, among others, the reasons stated above;

(d) Awarding Plaintiff their costs and attorneys' fees as appropriate;

(e) Granting such other relief as is just and proper.

Dated: July 6, 2007

Respectfully submitted,

David E. Frulla
D.C. Bar No. 414170
Shaun M. Gehan
D.C. Bar No. 483720
Kelley Drye & Warren LLP
3050 K Street, N.W. – Suite 400
Washington, D.C. 20007
Telephone: (202) 342-8400
Facsimile: (202) 342-8451

Attorneys for Plaintiff

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Fisheries Survival Fund | The Honorable Carlos Gutierrez |
| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF 88888 (EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT (IN U.S. PLAINTIFF CASES ONLY) NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |
| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)<br>David E. Frulla<br>Shaun M. Gehan<br>Kelley Drye & Warren LLP<br>3050 K Street, N.W.- Suite 400<br>Washington, D.C. 20007 | ATTORNEYS (IF KNOWN) |

## II. BASIS OF JURISDICTION

(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ○ 3 Federal Question (U.S. Government Not a Party)
- ⦿ 2 U.S. Government Defendant
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES

(PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT

**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

### ○ A. *Antitrust*

☐ 410 Antitrust

### ○ B. *Personal Injury/ Malpractice*

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

### ⦿ C. *Administrative Agency Review*

☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☒ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ○ D. *Temporary Restraining Order/Preliminary Injunction*

**Any nature of suit from any category may be selected for this category of case assignment.**

***(If Antitrust, then A governs)***

### ○ E. *General Civil (Other)* OR ○ F. *Pro Se General Civil*

Real Property
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

Personal Property
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

Bankruptcy
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

Property Rights
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

Federal Tax Suits
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

Other Statutes
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

**O G. *Habeas Corpus/ 2255***

- ☐ 530 Habeas Corpus-General
- ☐ 510 Motion/Vacate Sentence

**O H. *Employment Discrimination***

- ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)

*(If pro se, select this deck)*

**O I. *FOIA/PRIVACY ACT***

- ☐ 895 Freedom of Information Act
- ☐ 890 Other Statutory Actions (if Privacy Act)

*(If pro se, select this deck)*

**O J. *Student Loan***

- ☐ 152 Recovery of Defaulted Student Loans (excluding veterans)

**O K. *Labor/ERISA (non-employment)***

- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt. Reporting & Disclosure Act
- ☐ 740 Labor Railway Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**O L. *Other Civil Rights (non-employment)***

- ☐ 441 Voting (if not Voting Rights Act)
- ☐ 443 Housing/Accommodations
- ☐ 444 Welfare
- ☐ 440 Other Civil Rights
- ☐ 445 American w/Disabilities-Employment
- ☐ 446 Americans w/Disabilities-Other

**O M. *Contract***

- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholder's Suits
- ☐ 190 Other Contracts
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**O N. *Three-Judge Court***

- ☐ 441 Civil Rights-Voting (if Voting Rights Act)

**V. ORIGIN**

⦿ 1 Original Proceeding  O 2 Removed from State Court  O 3 Remanded from Appellate Court  O 4 Reinstated or Reopened  O 5 Transferred from another district (specify)  O 6 Multi district Litigation  O 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

See attached Addendum

**VII. REQUESTED IN COMPLAINT** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

**DEMAND $** 0 Check YES only if demanded in complaint

**JURY DEMAND:** YES ☐ NO ☒

**VIII. RELATED CASE(S) IF ANY** (See instruction) YES ☐ NO ☒ If yes, please complete related case form.

**DATE** July 5, 2007 **SIGNATURE OF ATTORNEY OF RECORD** [signature]

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

**CIVIL COVER SHEET**
**ADDENDUM**

***Fisheries Survival Fund v. Gutierrez***

**VI. CAUSE OF ACTION**

This action challenges an emergency rulemaking involving modifications to gear requirements designed to protect threatened and endangered sea turtles implemented by the Defendant Secretary of Commerce, by and through the National Marine Fisheries Service, under the judicial review provisions of the Endangered Species Act, 16 U.S.C. § 1540(c) and the Administrative Procedure Act, 5 U.S.C. §§ 701-06, as well as the Declaratory Judgment Act, 28 U.S.C. § 2201.